# Gardner's Estate.

*Banks and banking—Certificates of deposit—Statute of limitations—Partnership—Death of partner.*

A certificate of deposit issued by a banking house and payable to the order of the depositor upon the return of the certificate is not due or suable until return of it and demand has been made for the money, from which time the statute of limitations begins to run; and it is no defense against a claim on such a certificate that demand had not been made within six years from its maturity; but where the banking house consists of a partnership, and one of the partners dies after a certificate of deposit has been issued and has matured, demand for its payment from his estate must be made within six years from the date of the death of the partner, or it will be barred by analogy to the statute of limitations.

Argued April 19, 1910. Appeal, No. 294, Jan. T., 1909, by John Leahey, Executor of Michael Morricy,

deceased, from order of O. C. Blair Co., 1909, No. 261, dismissing exceptions to auditor's report in Estate of James Gardner, deceased. Before FELL, C. J., BROWN, MESTREZAT, POTTER and STEWART, JJ. Affirmed.

Exceptions to report of A. W. Porter, Esq., auditor.

The facts are stated in the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to auditor's report.

*J. Lee Plummer*, for appellant.—The individual estate of James Gardner was held by the Supreme Court to be liable for the certificates of deposit issued by the firm of Gardner, Morrow & Company: Gardner's Est., 199 Pa. 524; Hawk v. Johnston, 5 Cent. Repr. 468.

The claim of the appellant is not barred by the statute of limitations: McGough v. Jamison, 107 Pa. 336; Finkbone's App., 86 Pa. 368; Riddle v. First National Bank of Butler, 27 Pa. Fed. Repr. 503; Cook v. Carpenter, 212 Pa. 165; s. c., 212 Pa. 180; Swearingen v. Dairy Co., 198 Pa. 68; Smith v. Bell, 107 Pa. 352; Taylor's Admrs. v. Witman's Admrs., 3 Grant, 138.

Return of the certificate, and demand, within six years after the death of James Gardner was not required: Girard Bank v. Bank of Penn Twp., 39 Pa. 92; Humphrey v. Bank, 113 Pa. 417; McGough v. Jamison, 107 Pa. 336; Finkbone's App., 86 Pa. 368; Cook v. Carpenter, 212 Pa. 180.

*W. I. Woodcock*, with him *O. H. Hewit, Stevens & Pascoe, Robert W. Smith, Edmund Shaw* and *H. A. Mc-Fadden*, for appellees.—The engagement of a bank with its depositors is not to pay absolutely and immediately, but when payment shall be required at the banking house; and therefore it is not in default, or to respond in damages, until demand and refusal; nor does the statute of

limitations begin to run until demand has been duly made. But if the bank has rendered an account claiming the deposit as its own, or if it has suspended payment and closed its doors against its creditors, or has done any act, that operates as a notice of its intention not to pay its deposit, a demand is dispensed with, and the statute begins to run from the date of such act: Watson v. Phœnix Bank, 49 Mass. 217; Farmers' & Mechanics' Bank v. Planters' Bank, 10 G. & J. (Md.) 422; Morrison v. Mullin, 34 Pa. 12; Franklin Savings Bank v. Bridges, 20 W. N. C. 43; Swearingen v. Dairy Co., 198 Pa. 68.

The claim was barred by sec. 19 of the act of assembly of April 19, 1794, 3 Sm. L. 143; Blackmore v. Gregg, 2 W. & S. 182; Man v. Warner, 4 Whart. 455; Campbell v. Fleming, 63 Pa. 242.

The claimant was barred by laches: Hayes' App., 113 Pa. 380; United States v. Beebee, 17 Fed. Repr. 36; Beecher's Est., 46 Pitts. Leg. Journ. 84.

OPINION BY MR. JUSTICE BROWN, May 16, 1910:

James Gardner, Anthony S. Morrow and William Jack were partners, trading and doing business in Hollidaysburg as a private banking house, under the firm name of Gardner, Morrow & Company. On May 14, 1891, Michael Morricy deposited with them $3,050, and they delivered to him a certificate, of which the following is a copy:

"No. 7582.    Banking House of Gardner, Morrow & Co.
                    "HOLLIDAYSBURG, PA., May 14, 1891.

"Michael Morricy has deposited in this bank three thousand and fifty dollars, payable to his order, on return of this certificate, six months after date, with interest at 4 per cent per annum.
"$3050.00.          GARDNER, MORROW & Co."

On April 5, 1894, James Gardner, then a member of the said banking firm, died, and letters testamentary were duly issued to executors named in his will. After

his death Morrow and Jack, the surviving members of
the firm, continued the banking business under the same
firm name until September 18, 1896, when they executed
a deed of assignment for the benefit of creditors. The
assignee closed up the assigned estate, the creditors re-
ceiving a little less than twelve per cent on their claims.
James Gardner, some time before his death, sold lime-
stone in place, which was to be paid for as quarried, and
his executors since his death have been in receipt of in-
come from the sale of it. They have filed six partial ac-
counts of his personal estate, including the income from
the limestone, all of which have been duly audited by
the orphans' court below, and distribution has been
made of the moneys in the hands of the executors to the
decedent's creditors, among whom were depositors in
the banking firm of Gardner, Morrow & Company who
made deposits prior to his death. The last distribution
was of the funds in the hands of the surviving executor
according to the sixth account. Michael Morricy failed
to present his certificate of deposit for payment either
at the banking house of Gardner, Morrow & Company
during the lifetime of James Gardner or while it was con-
ducted by his surviving partners after his death or at
the distribution of the assigned estate of the surviving
partners or at any of the distributions of the personal
estate of James Gardner made on the first five accounts
filed. He lived in the mountains some thirty miles from
Hollidaysburg and could neither read nor write. He had
no knowledge of the death of James Gardner, of the
failure of the banking house, of the distribution of the
assigned estate of the surviving partners or of the five
distributions made on the estate of James Gardner until
some time in 1907. On April 28, 1909, he presented his
certificate for payment to the auditor making distribu-
tion on the sixth account. The auditor held that the
claim was barred by the statute of limitations. While
we cannot follow with approval some of the reasons
given by the learned judge below for sustaining the re-

port of the auditor, we do concur in his conclusion that the claim of appellant's decedent was properly disallowed.

Although the certificate of deposit issued to Morricy by the banking firm of Gardner, Morrow & Company was payable on its face to his order upon its return six months after date, it was not due so as to give a right of action upon it until payment was demanded. The rule as to a certificate of deposit issued by a banking house and payable to the order of the depositor upon the return of the certificate is that it is not due or suable until return of it and demand has been made for the money, from which time the statute of limitations begins to run; and it is no defense against a claim on such a certificate that demand had not been made within six years from its maturity: Girard Bank v. Bank of Penn Twp., 39 Pa. 92; Finkbone's App., 86 Pa. 368; McGough et al. v. Jamison, 107 Pa. 336; Riddle v. First National Bank of Butler, 27 Fed. Repr. 503; 1 Bolles Modern Law of Banking, p. 462. If the banking firm of Gardner, Morrow & Company had continued to be a going concern up to April 28, 1909—nearly eighteen years after the certificate of deposit was issued to Morricy—and he had then presented it to the firm and demanded payment, the statute of limitations would have been no defense to it; but this is not the situation here presented. What we are to determine is whether, under the conditions existing when the certificate of deposit was presented for payment to the surviving personal representative of Gardner, the deceased partner, the right to recover upon it was barred by the statute of limitations. Changed conditions at times beget new duties to parties to an existing contract, and what might not have been a duty on the part of Morricy while the banking firm continued in existence might have become so when it ceased to exist. The claim as now made by Morricy's personal representative is against the estate of one of the deceased partners who died fifteen years before the certificate was

ever presented against his estate. His death ipso facto dissolved the partnership, and the law presumes that Morricy had notice of his death. Ignorance of it and ignorance of the dissolution of the partnership that followed upon it will not be regarded by the law as any excuse for the delay of the unfortunate depositor in presenting his claim. The law knows only that he delayed for fifteen years from the time Gardner died in making demand for payment against his estate, and the question is whether he could thus sleep on his conceded right to make a demand during all that period and then be heard to say that the statute of limitations did not commence to run until 1909, because he had chosen not to make demand before that time. As stated, he is conclusively presumed to have known that Gardner died and that the partnership was dissolved. He is further presumed to have known that the law contemplates the settlement of a decedent's estate and the payment of creditors within a year from the time of death. Such is the plain intendment of the statutes relating to the distribution of decedents' estates. After two years the real estate of a decedent is absolutely discharged from unrecorded claims, but, if the contention of this appellant should prevail, a claim on a simple contract not heard of for fifteen years from the time of the death of the decedent is to be allowed to participate in the distribution of his estate under the general rule that the statute of limitations does not run against certificates of deposit issued by a bank except from the time demand is made. It is often said that there is no rule without its exception, and this is true in the case before us. To hold that the estate of a deceased member of a banking firm is to be indefinitely liable to a depositor to whom his firm may have issued a certificate, payable on demand, would be to permit the estates of the other partners, if deceased, to be distributed without any opportunity to compel contribution by the representative of the deceased partner against whose estate the claim might be made and

allowed. The only true, reasonable and equitable rule to be applied in the present case is that laid down in Morrison's Admr. v. Mullin, 34 Pa. 12: "But was the statute, therefore, never to close upon such an agreement —never to commence running, if the plaintiff chose to sleep on his rights? The statute fixes the period within which suit may be brought in case, to recover money, or to enforce a promise, to 'six years next after the causes of action, or suit, and not after.' 'From the time the right of action accrues:' Overton v. Tracey, 14 S. & R. 311. To give effect to the spirit of the statute, the law sometimes, in the absence of stipulation by the parties, fixes the time when the cause of action shall be taken to have accrued, by the duty of diligence required of the party. Where the time for doing an act, necessarily precedent to bringing suit, is indefinite, it allows a reasonable time. When that reasonable time has elapsed, the duty of diligence begins. And if this consists in the assertion of a legal right, then is the time from whence the statute should begin to run."

It would not be an unreasonable rule to hold, where there is a right to demand payment from the estate of a decedent—such right as Morricy possessed when Gardner died—that the demand ought to be made within the time contemplated by the statutes for the settlement of decedents' estates; but, in any event, the time within which such demand ought to be made against a decedent's estate should not exceed the period within which a right of action is enforcible. This conflicts with no settled rule. In the case at bar Morricy had a right to demand payment six months after the certificate was issued to him. As long as those who issued it continued to live he was not called upon to make any demand to prevent the running of the statute, but when the conditions changed, when the partnership was dissolved by the death of Gardner, and his estate became at once liable to pay the depositors, it offends reason to say that, notwithstanding the right of the depositor, Morricy, to

make demand for the payment of his certificate from Gardner's estate, he could sleep on that right for fifteen years and then for the first time make demand and have his claim allowed. The duty of diligence on the part of Morricy began with the death of Gardner, and the law indulged him in making demand for six years from the date that letters were granted upon the estate and there was someone upon whom he could make demand, but after that period, by analogy to the statute of limitations, it was too late to make the demand. For this reason the claim of the appellant was properly disallowed by the court below.

Decree affirmed at appellant's costs.